**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**DISTRICT COUNCIL OF PAINTERS, NO. 52, AFL–CIO, BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, Respondent.**

**No. 20505.**

United States Court of Appeals
Ninth Circuit.

July 1, 1966.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., Washington, D. C., for petitioner.

Charles K. Hackler, Eugene Miller, Julius Reich, Brundage & Hackler, Los Angeles, Cal., for respondent.

Before MERRILL and BROWNING, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

The National Labor Relations Board, having found the Respondent Union guilty of unfair labor practices in that the Union caused Maynard C. Belvoir, a painting contractor, to discharge one Cecil C. Johnson because he was not a member of the Union, has petitioned this Court for a decree enforcing the final order of the Board. The Respondent has informed the Court that it here contests "only so much of the petition for enforcement as requires it to inform the Company that it has no objection to the employment of [Johnson], and to make payments to [Johnson]." (Br. 3). The Respondent does not contest the finding of unfair labor practices, and indeed, the entire thrust of Respondent's brief and oral argument is aimed solely at showing that portions of the final order of the Board should not be enforced because of "patent inequity."

The facts are fairly simple. Belvoir and the Union had entered into a collective bargaining agreement which required Belvoir to hire only applicants referred through the dispatch procedures of the Union hiring hall. The Union, in turn, was required not to discriminate between Union members and non-members in making referrals. Johnson, a non-member, was hired without a referral by the Union. On his second day at work, Johnson was fired upon complaint of the Union's business agent that he couldn't work because he was not a member of the Union. It is this discharge, induced by the Union for an unlawful reason, which underlies the Board's finding of unfair labor practices.

In essence, the position of the Union is that although Johnson's discharge was for an unlawful reason there existed, at the time of the discharge, a legitimate reason: Johnson had not been referred through the hiring hall dispatch system. Because of the existence of this independent ground for Johnson's discharge, the Union urges that it would be inequitable to require it to withdraw objection to Johnson's employment and to make him whole in terms of back pay.

The Respondent argues that the Board's order presumes that the hiring hall procedure was discriminatory, and it cites Local 357, Int'l Bhd. of Teamsters v. N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961), for the proposition that discrimination in hiring hall arrangements must not be presumed. The appropriate remedy, in the Union's view, is to leave Johnson where the Board found him—out of work—and to remit him to the hiring hall. Otherwise, the Union argues, the policy of the National Labor Relations Act will be subverted, not enhanced, because under the Board's order, Johnson will be placed in a preferred position in relation to employees who have used the dispatch system and will be vested with "super-seniority", itself a violation of the Act.

██ We think Respondent's argument misses the mark. In the first place, Teamsters v. N. L. R. B., supra, stands only for the proposition that absent evidence of discrimination, hiring hall procedures are not per se discriminatory. Here there is evidence of an attitude of discrimination on the part of the business agent who demanded Johnson's discharge. Further, the action of the Union in this case has created a situation in which it is impossible to say what might have happened had Johnson been required to utilize the dispatch system. The Union must, in our view, take the consequences of its wrong, and cannot now argue that the same discrimination which resulted in Johnson's discharge would not have occurred at the hiring hall. In this connection, however, we note that nothing· in the Board's order requires Respondent to refrain from seeking enforcement of any hiring hall system which may presently exist, so long as that enforcement is sought after the order is complied with. The objection which the order requires the Union to withdraw is its objection based on Johnson's non-membership in the Union.

The obvious purpose of this part of the order, as well as that part which calls for back pay, is to restore the employee as nearly as possible to the situation "which would have obtained but for the illegal discrimination." Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). If, after the pre-discrimination *status quo* is restored, there are then existing non-discriminatory reasons for the Union to object to Johnson's employment, nothing in the Board's order, as we read it, would operate to prevent the Union from pressing such objection. The Board has found that its order will effectuate the policies of the Act and we see no reason to disturb that finding.

Respondent has cited many cases in its brief in which reinstatement and back pay were denied to an employee who had been discriminatorily discharged when non-discriminatory reasons for the discharge were also present. Without specific reference to each such case, it suffices to point out that in all of them, the employee was guilty of some form of culpable misconduct of such a nature to render him unemployable without regard to his Union membership or lack thereof. Excessive absenteeism, giving false testimony in Board hearings, falsifying employment applications, concealing prior criminal convictions, threatening bodily harm to the employer or his supervisory personnel, and so on, are the circumstances which appear in the cases where the Board or the Courts have refused to order reinstatement and back pay to employees who had been discriminatorily discharged in the first instance. We do not believe that this is such a case. Nothing Johnson did or failed to do represents the kind of misconduct which would justify our refusal to enforce the Board's order, especially since, so far as the record reflects, Johnson was unaware that the dispatch system of the Union hiring hall was the only proper route to obtain the employment he obtained by simply walking up and asking the company foreman for a job.

 Finally, we reject Respondent's argument that the effect of the order is to vest Johnson with "super-seniority" as the term is used in N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963). In that case, the Supreme Court upheld the Board's finding that "super-seniority" was inherently discriminatory. The facts were that the employer hired replacements for his striking workers under an arrangement whereby those replacements (and any strikers who returned to work) were given job tenure rights equal to those held by a worker with twenty years on-the-job seniority. No such situation is created by the Board's order.

Accordingly, the final order of the Board will be enforced in conformity with this opinion.